Mary McNamara, SBN 147131
Britt Evangelist, SBN 260457
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Attorneys for Defendant JOHN BUI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>v.<br><br>JOHN BUI,<br><br>                     Defendant. | No. CR 09-00770 SI<br><br>**DEFENDANT'S REPLY TO THE SENTENCING MEMORANDUM OF THE UNITED STATES**<br><br>Date:   March 5, 2010<br>Court: Hon. Susan Illston<br>Time: 11:00 a.m. |

I.      INTRODUCTION

The government concedes the truth of Mr. Bui's extraordinary family circumstances and acceptance of responsibility but asserts that these factors are somehow offset by prosecutorial restraint in seeking sentencing enhancements and in forbearing from criminal prosecution of his family members. Many of the enhancements are of doubtful application in this case and in any event, it appears that the government has adopted an across-the-board litigation strategy of bargaining them away in all of the United Investments (Danny Chou-related) mortgage fraud cases currently pending before the Court. Prosecution of family members would have been difficult – unlike with Mr. Bui himself, the government has obtained no confessions from any family member and there is no proof that their involvement was anything other than innocent and unwitting. The government concedes that Mr. Bui and Mr. Bui alone was the broker in his own business and that he obtained the false verifications using a network controlled by United Investments' Danny Chou, not any network in his own office. Accordingly, these after-the-fact mentions of leniency do not refute Mr. Bui's detailed showing on section 3553 factors.

That showing is unopposed. The government raises no dispute as to the extremity of Ms. Tran's situation with the autistic child or the lack of other means of daily parental support. Nor does the government contest the extraordinary nature of Mr. Bui's acceptance of responsibility in confessing the full extent of his conduct, disclosing all of his assets and paying over every dollar in his possession in satisfaction of a massive forfeiture judgment. And, the government agrees that it would have required heroic efforts to track down a loss amount in this case absent the confession by Mr. Bui that provided a gain figure. In arguing that Mr. Bui nonetheless should serve 51 months instead of 25 months, the government does not explain how the longer sentence "deters" others from like offenses in a way that a 25 month sentence with a massive forfeiture judgment, permanent loss of livelihood and financial ruin would not be sufficient to do. Still less does the government show how, in this specific case, Mr. Bui will be more deterred by a 51 month sentence than a 25 month sentence. The inarguable fact is that Mr. Bui fully recognizes the seriousness of his situation, the gravity of the offenses that he has committed and the

consequences his conduct has wrought.  He has already paid a very heavy price for his crimes and is effectively deterred from future conduct.  A sentence of 25 months is more than sufficient to serve the remaining goals of sentencing.

## II.  ARGUMENT

### A.  Mr. Bui's Plea Agreement Does Not Reflect Leniency

The government opposes Mr. Bui's request for a sentencing variance because it claims already to have taken his extraordinary circumstances into account by conferring two separate forms of leniency on Mr. Bui: (1) opting not to seek certain offense enhancements and to base its guidelines calculations on gain, rather than loss; and (2) declining to prosecute members of Mr. Bui's family for their alleged involvement in his criminal activities.  Govt. Sent. Memo. at 15-16. As a general observation, because neither of these purported favors formed part of the plea negotiations in this case and are not reflected in the plea agreement, their assertion at this late stage should be viewed with some skepticism (plea agreements are required to contain all material terms of the bargain and are construed strictly against the government).

More specifically, with respect to its claim of forbearance on sentencing enhancements, the government's position reflects its global strategy in all of the Danny Chou/United Investments mortgage fraud cases, not its particularized consideration of Mr. Bui's individual circumstances.  Defense counsel has reason to believe that the government asserted few, if any sentencing enhancements against the other brokers who engaged in precisely the same conduct as Mr. Bui.  Moreover, many of the enhancements cited by the government simply do not apply to Mr. Bui.  As to the government's claim of restrained treatment of Mr. Bui's family, there is simply no showing that the family members in question are criminally culpable, rather than unwitting participants or uninvolved ministerial employees.  Further, it is undisputed that  Ms. Tran and Justin Bui – the family members affected by the extraordinary circumstances – had no involvement whatsoever in Mr. Bui's business.  Accordingly, Ms. Tran and Justin Bui cannot have been part of the government's leniency calculus.  Finally, even if there had been contemporaneous back-and-forth bargaining and the government and defense had agreed that the

guidelines incorporated various forms of leniency, such considerations would not foreclose a variance on extraordinary family circumstances. The extraordinary family circumstances departure focuses on the *affected family members* and whether or not the recommended sentence would inflict extraordinary suffering on them. It does not focus on whether or not the recommended sentence would be lenient for the defendant. Because the government essentially concedes the extraordinary nature of the circumstances of Ms. Tran and Justin Bui in this case, the Court should grant the requested sentencing variance.

### (I) The Government Has Adopted Plea Bargaining Strategies Eliminating Enhancements Across the Board in these Mortgage Fraud Cases

The strategy not to seek enhancements against Mr. Bui and to base the guidelines calculations on gain rather than loss reflects the government's general litigation stance in these Danny Chou/United Investments mortgage broker cases. The government has uniformly sought few or no enhancements against the involved brokers in exchange for early resolutions.

The government states that it has prosecuted 12 individuals in the conspiracy, including Mr. Bui. Six are low-level employment verifiers (see footnote 2, *supra*). The five remaining defendants, like Mr. Bui, were mortgage brokers who engaged in fraud. These five earned $13 million during the time period of the offense conduct. Gov. Sent. Memo. at 6. The defense has a good faith basis to believe that the understandings reached between the government and the defendants in these other cases reflect virtually none of the enhancements that the government asserts it restrained itself from seeking here because of Mr. Bui's individual family circumstances.[1] Thus, the government's sentencing decisions in this case are not materially different from the decisions it has made in all of the broker cases, where family circumstances or extraordinary acceptance of responsibility are not at play.

Moreover, in drafting Mr. Bui's plea agreement, the government never included mention of the fact that it was engaging in such a generous exercise of leniency. *See United States v. Abbott*, 241 F.3d 29, 33-34 (1st Cir. 2001) (noting the necessity of "[f]ull disclosure to the

---

[1] Further, the defense has a good faith basis to believe that all of these agreements, like Mr. Bui's, rely on gain as a measure of culpability, rather than loss.

**Defendant's Reply Sentencing Memorandum**
*United States v. Bui*, CR 09-0770 SI      3

district court of the material terms of plea agreements"); *United States v. Moore*, 931 F.2d 245, 249 (4th Cir. 1991) (stating that Rule 11 "is properly read to mean that all material terms (or material 'details' or 'elements') of the agreement must be disclosed") (collecting cases). To the contrary, the government specifically permitted Mr. Bui to argue for a sentencing variance on Section 3553 grounds (in full knowledge of Mr. Bui's family circumstances and his acceptance of responsibility). This would be a strange bargain for the government to strike if it believed that Mr. Bui had already received the benefit of these very 3553 factors in the guideline calculations agreed on by the parties. Because the plea agreement is silent about the benefits the government now claims it conferred on Mr. Bui, the Court should assume that no such benefits were contemplated or reflected in the guideline calculation. *United States v. Transfiguracion*, 442 F.3d 1222, 1228 (9th Cir. 2006) ("In the context of plea agreements, the government is usually the drafter and must ordinarily bear the responsibility for any lack of clarity.") (internal quotations omitted); *United States v. De la Fuente*, 8 F.3d 1333, 1338 (9th Cir. 1993) ("Construing ambiguities in favor of the defendant makes sense in light of the parties' respective bargaining power and expertise.").

### (ii) Many of the Enhancements Do Not Apply in Mr. Bui's Case

Even if the government had not adopted a one-size-fits-all litigation strategy of securing early plea bargains without pressing for enhancements, many of the sentencing enhancements that the government claims to have refrained from seeking in fact do not apply to Mt. Bui.

For example, the government states that it could have sought an enhancement under section 2B1.1(b)(2) because Mr. Bui's offense involved more than ten victims. Govt. Sent. Memo, 16. However, Ninth Circuit law defines "victims" under section 2B1.1 as only those individuals or institutions who "sustained a loss that is monetary or that otherwise is readily measurable in money and that loss must be included in the loss calculation." *United States v. Armstead*, 552 F.3d 769, 780-81 (9th Cir. 2008). Here, no losses to lenders were included in a loss calculation, precluding application of this enhancement.

The government also contends that Mr. Bui's offense level could be enhanced by 4 points

**Defendant's Reply Sentencing Memorandum**
*United States v. Bui*, CR 09-0770 SI                    4

under section 3B1.1 because he was a "leader or organizer" of a mortgage fraud operation that involved five or more participants or was otherwise extensive. Govt. Sent. Memo., 16. A "participant" is one who is "criminally responsible for the commission of the offense" (U.S.S.G. § 3B1.1, Application Note 1), and to be eligible for this enhancement, Mr. Bui must have been "exercised some control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime." *United States v. Hoac*, 990 F.2d 1099, 1110 (9th Cir. 1993) (vacating sentence including aggravating role enhancement). However, aside from Mr. Bui, the criminally responsible participants in this scheme were other independent brokers and individuals who posed as employment verifiers. Mr. Bui had no role in supervising or leading these individuals – the brokers worked from ringleader Danny Chou's office, and the purported employment verifiers also were recruited and controlled by Chou. As the government concedes, these persons were in "*Chou's* network of bogus employers" and it was Chou who "recruited [them] for the brokers" (Gov. Sent. Memo. at 3).[2]

Although the government implies criminal participation by Bui family members who worked at various times in the business, there is no evidence that any of them knew that Mr. Bui

---

[2] The Court has sentenced all six of the individuals who served as fake employers for United Investments. There is not one mention of John Bui in any of these cases. Rather, in each case, the government's sentencing memorandum confirms that Danny Chou, not Mr. Bui, recruited and organized the network of fake employers. Government's Sentencing Memorandum at 3-4, *United States v. Hu*, No. 3:09-01106 (N.D. Cal. Jan.7, 2010) ("One of the companies utilized by United for purposes of falsifying employment information on loan applications as described above was ABC Insurance dba Asian Business Care ('ABC'), which was owned and operated by the defendant since at least 2004. On July 28, 2009, the FBI interviewed Ms. Hu and she said that she met United's owner through ABC and that that person asked her to tell banks that United clients were employed with ABC even though they were not because it would help get the clients' loans approved. Hu agreed to do so . . . Hu admitted that she received several payments for performing this VOE service for United."); *see also* government sentencing memoranda in *United States v. Chao*, CR 09-0931 SI (N.D. Cal. Jan.19, 2010) (same); *United States v.Chua*, CR 09-0954 SI (N.D. Cal. Jan.7, 2010) (same); *United States v. Cochico*, CR 09-1096 SI (N.D. Cal. Dec. 11, 2009) (same); *United States v. Le Lac*, CR 09-1078 SI (N.D. Cal. Dec. 8, 2009) (same); *United States v. Im*, CR 09-1161 SI (N.D. Cal. Jan.7, 2010) (same).

**Defendant's Reply Sentencing Memorandum**
*United States v. Bui*, CR 09-0770 SI                  5

was submitting false information on mortgage applications.[3] As the PSR and government both agree, the only broker in Mr. Bui's business was Mr. Bui himself, and it was Mr. Bui who originated all of the loans. Govt. Sent. Memo. at 2; PSR ¶ 9. Mr. Bui's family members at various times were employed in ministerial roles, transferring information to banks, organizing paperwork, filing and secretarial work. Family members had no role in originating loans, handling substantive meetings with clients or providing false employment verifications.

On abuse of trust under section 3B1.3, while Mr. Bui was a broker, this was not a fiduciary role with respect to either the banks or the customers.[4] Given the nature of the overall offense conduct, involving arms-length deals with banks that had erased due diligence controls – with the predictable, if not intended results that applicants would lie as to their credit-worthiness – it is difficult to see the fairness in applying such an enhancement to Mr. Bui.

Finally, with respect to sophisticated means (U.S.S.G. § 2B1.1), while the case law admittedly takes a liberal approach to applying this enhancement, much of what Mr. Bui did was not very sophisticated. Rather, in many instances, the lies as to credit-worthiness were very basic – the submission without more of a form falsely stating the applicant's employer and annual income (the so-called "liar loans"). *See, e.g.*, Alan Zibel, *"Liar Loans" Threaten to Prolong Mortgage Crisis*, Huffington Post, Aug. 18, 2008 ("In the mortgage industry, they are called "liar loans" – mortgages approved without requiring proof of the borrower's income or assets.").[5] As to the loans requiring paperwork, the extent of the paperwork was minimal because the banks needed to book loans at a rapid rate in order to securitize them into bundles that could be sold on

---

[3] Nor does the fact that Mr. Bui involved some family members in shredding prove *their* criminal culpability – there is no evidence that Mr. Bui told anyone that he was trying to destroy loan files for an improper purpose.

[4] The government relies on *Lingsch v. Savage*, 213 Cal.App.2d 729, 736 (1963), for the proposition that Mr. Bui had a fiduciary duty. *Lingsch*, however, stands only for the proposition that a real estate broker representing a seller has a duty to disclose facts that may be unknown to the buyer; it does not address whether a broker has a fiduciary duty to the lending institution.

[5] www.huffingtonpost.com/2008/08/18/liar-loans-threaten-to-po_n_119650.html

**Defendant's Reply Sentencing Memorandum**
*United States v. Bui*, CR 09-0770 SI         6

Wall Street. The banks cared little about the credit-worthiness of the individual borrower – indeed, they expected to that bad loans would be funded. The idea was to spread the risk of the bad loans throughout the bundles of securities. *See* Ben S. Bernanke Testimony before U.S. House of Representatives, Committee on Financial Services: *Subprime Mortgage Lending and Mitigating Foreclosures*, (Sept. 20, 2007), at 1-2 ("The originate-to-distribute model seems to have contributed to the loosening of underwriting standards in 2005 and 2006. When an originator sells a mortgage and its servicing rights, depending on the terms of the sale, much or all of the risks are passed on to the loan purchaser. Thus, originators who sell loans may have less incentive to undertake careful underwriting than if they kept the loans.").[6] The banks' business model had changed from the decades-long tradition of acquiring individual, long term mortgages backed by solid collateral to the get-rich-quick model of booking loans of dubious quality in order to assemble packages of securitized debt obligations that could be traded on the market. *See* Kathleen Pender, *Mortgage Options Explode*, San Francisco Chronicle, Apr. 13, 2006 (discussing increased use of exotic loan packages);[7] *see also* Steven Krystofiak, President, Mortgage Brokers Association for Responsible Lending, Testimony before the Federal Reserve (Aug. 2006).[8] In short, the fraud largely involved elementary deception – lies on a form that would undergo only the most glancing examination by a bank.[9]

---

[6] www.federalreserve.gov/newsevents/testimony/bernanke20070920a.htm

[7] articles.sfgate.com/2006-04-13/business/17291505_1_interest-only-loans-home-equity-refinancers

[8] www.federalreserve.gov/secrs/2006/august/20060801/op-1253/op-1253_3_1.pdf

[9] The government cites *Lemon v. United States*, 278 F.2d 369 (9th Cir. 1960), and *United States v. Ciccone*, 219 F.3d 1078 (9th Cir. 2000), for the proposition that the gullibility and negligence of the victim-lenders cannot, as a matter of law, provide support for Mr. Bui's variance motion. Govt. Sent. Memo. at 14. As described in Mr. Bui's opening sentencing memorandum, however, the reckless lending practices of the victim-lenders were not the result of negligence or gullibility. Rather, these lenders made conscious, profit-motivated decisions to extend increasing amounts of "liar loans," negative amortization loans and option arm loans. *See* Steven Krystofiak, President, Mortgage Brokers Association for Responsible Lending, Testimony before the Federal Reserve (Aug. 2006), www.federalreserve.gov/secrs/2006/august

**Defendant's Reply Sentencing Memorandum**
*United States v. Bui*, CR 09-0770 SI                 7

**B) The Alleged Culpability of Mr. Bui's Family Members is Irrelevant to the Court's Decision Whether to Grant a Sentencing Variance**

The government argues that the Court should decline a variance because the agreed-upon guidelines range already reflects the government's restraint in not prosecuting Mr. Bui's family. However, a decision whether to grant a variance because of extraordinary family circumstances must be based on the effect of incarceration on a defendant's family, not on the alleged culpability of the defendant or other persons whom the government has chosen not to prosecute. *See United States v. Johnson*, 964 F.2d 124, 129 (2d Cir. 1992) (stating that rationale for downward departure based on family circumstances is not defendant's culpability but "reluctan[ce] to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing").[10]

Had the government desired to increase Mr. Bui's sentence in return for lenience to his family, it could have done so during plea agreement negotiations, assuming that it had probable cause to prosecute those family members. *See Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978); *see also Mosier v. Murphy*, 790 F.2d 62, 66 (10th Cir. 1986); *see also United States v. Rodriguez-Duenas*, No. 03-237–S-BLW, 2007 WL 1381779, at *6 -7 (D. Idaho Apr. 30, 2007). Nothing in the plea agreement reflects that the government forbore prosecution of family members in exchange for Mr. Bui's guilty plea. That the government has chosen not to prosecute Mr. Bui's family reflects a sound exercise of prosecutorial discretion[11] but is not relevant to an

---

/20060801/op-1253/op-1253_3_1.pdf ("Banks allow such high volumes of risky loans to be originated because days after the loan funds they get pooled together with millions of dollars of other loans and sold to financial institutions, pension companies, life insurance companies, foreign governments and the US federal government on Wall Street on what is called the secondary market.").

[10] The family members whom the government alleges played a part in the criminal conduct are not those who will suffer the impact of Mr. Bui's incarceration. Mr. Bui's partner, Ms. Tran, and his autistic son did not participate in the fraud, the obstruction of justice, or the witness tampering and were never employed by Mr. Bui. Yet it is they, along with the couple's other child, Matthew, who will be most hurt by Mr. Bui's absence during his imprisonment.

[11] Prosecution of those who may have assisted in the disposal of Mr. Bui's mortgage files would require proof that the charged persons destroyed the records "*with the intent* to impede,

**Defendant's Reply Sentencing Memorandum**
*United States v. Bui*, CR 09-0770 SI          8

analysis of the impact Mr. Bui's incarceration on his partner and son.[12]

### C) Greed was Not the Motive and Pointing out the Role of the Banks Does Not Detract from Acceptance of Responsibility.

Citing a mansion in Las Vegas, two houses in the Bay Area and a multi-million dollar life investment vehicle, the government asserts that amassing a fortune was what drove Mr. Bui to commit his offense conduct. Gov. Sent. Memo. at 8. While it is true that Mr. Bui did not commit the offense to obtain basic items such as food or housing, it is also true that he was not motivated by greed, but rather a desire to provide for his family. The Las Vegas property was a commercial venture in which Mr. Bui was a part investor with many others, the two houses in the Bay Area he gave to his mother, brother and sisters and the beneficiaries of the multi-million life investment were his partner and two sons so that they could have provision in the event of his

---

obstruct or influence the investigation" into J.B. Financial. 18 U.S.C. § 1519 (emphasis added). There is no evidence to indicate that the family members involved in the destruction of Mr. Bui's files had the requisite intent. *See* PSR ¶ 13 (acknowledging that "others" besides Mr. Bui were involved in the destruction of the files but stating only that "[Mr.] *Bui* did so with the intent of preventing the FBI from obtaining evidence."). As to the witness tampering charges, it is far from clear that the conduct of Mr. Bui's mother amounts to witness tampering. Assuming, *arguendo*, that Mr. Bui's mother knew of the contents of the sealed envelope that she handed to CI-2 (named CI-1 in the government's brief), simply discouraging a witness from disclosing information where that witness holds a Fifth Amendment privilege to remain silent, is not universally considered witness tampering. *United States v. Farrell*, 126 F.3d 484, 488-89 (3rd Cir. 1997) (holding that "§ 1512(b)(3)'s 'corruptly persuades' clause does not [prohibit] a noncoercive attempt to persuade a coconspirator who enjoys a Fifth Amendment right not to disclose self-incriminating information about the conspiracy"). As noted in Mr. Bui's opening Sentencing Memorandum, the Ninth Circuit has yet to decide this issue. *See* Defendant's Sentencing Memorandum at 3, fn. 1. It should be noted that the only Ninth Circuit district court to consider this issue, found the reasoning of the Third Circuit persuasive and held that merely encouraging a witness to not disclose information is not witness tampering. *United States v. Makham*, No. CR.03-30069-AA, 2005 WL 3533263, at *7 (D. Or. Dec. 23, 2005).

[12] Nor should much reliance be placed on the government's decision not to attempt to forfeit the property of family members that had been posted to secure Mr. Bui's release. Forfeiture of collateral is never pursued in this district absent flight by a defendant. Further, Rule 46(f)(2) of the Federal Rules of Criminal Procedure provides for a setting aside of bail forfeiture where: (A) the surety later surrenders into custody the person released on the surety's appearance bond; or (B) it appears that justice does not require bail forfeiture. Mr. Bui waived release on his remand and none of the family members who had posted property was involved in the witness tampering, which would have provided ample grounds for a set aside.

**Defendant's Reply Sentencing Memorandum**
*United States v. Bui*, CR 09-0770 SI              9

death. There were no flashy cars, no fancy clothes and no high living. The frugal Mr. Bui spent nothing on himself but rather saved and invested every penny for purposes of securing a future of his family. While there is no gainsaying that Mr. Bui bought this family security with illegal proceeds, greed appears not to have been the impulse behind his actions.

Nor is it appropriate to say that pointing out the role of the banks in the mortgage crisis reverses Mr. Bui acceptance of responsibility. Rather, as discussed in the opening sentencing memorandum, the causes of the mortgage and financial crisis were multifaceted and this case involves market forces far out of Mr. Bui's control. One of those forces was the casino atmosphere generated by the ever evolving and ever riskier practices of the lending institutions. As housing prices sky-rocketed, lenders did not rein in credit, instead they marketed growing numbers of interest-only and negative amortization loans. For example, in 2001 interest-only loans comprised only 2.9% of Bay Area loans and negative amortization loans accounted for only 1.6% of lending. By 2005, these numbers had jumped to 42.6% and 29.1%, respectively. *See* Steven Krystofiak, President, Mortgage Brokers Association for Responsible Lending, Testimony before the Federal Reserve (Aug. 2006), *available at* http://www.federalreserve.gov/secrs/2006/august/20060801/op-1253/op-1253_3_1.pdf. These are the facts. Acknowledging them as true serves only to aid in the understanding of why Mr. Bui, an otherwise decent person, who had worked since the age of 14 to make a life in this country for his mother, five siblings and two children, could possibly have fallen so far.

### III. CONCLUSION

Based on the foregoing, Mr. Bui respectfully requests that the Court impose a sentence of 25 months.


Dated: March 3, 2010                                     Respectfully submitted,

                                                                        /s/
                                                         Mary McNamara
                                                         SWANSON & McNAMARA LLP
                                                         Attorneys for JOHN BUI